SKEEN v. PETERSON.

No. 7115.   Decided August 16, 1948.   (196 P. 2d 708.)

484

See 7 C. J. S., Attorney and Client, sec. 185. Authority of attorney to employ another attorney at expense of client, see note, 90 A. L. R. 265. See, also, 5 Am. Jur. 357.

*F. R. Bayle,* of Salt Lake City, for appellant.

*Harvey A. Sjostrom,* of Logan, for respondent.

WOLFE, Justice.

Appeal by the plaintiff from a verdict and judgment of no cause of action in a suit by plaintiff against defendant to recover attorney's fees, and from a judgment of $500 in favor of defendant and against plaintiff on defendant's counterclaim. The parties are referred to as they appeared in the court below. The facts, insofar as material here, are as follows:

The plaintiff is an attorney at law, regularly admitted to practice before the courts of this state. He is engaged in a general law practice, and maintains his office in Salt Lake City, Utah.

At some time prior to August 3, 1945, the defendant herein was charged with the crime of grand larceny of a heifer. Preliminary hearing was held before the city judge of Logan, and after hearing defendant was bound over to the district court for trial. At the preliminary hearing defendant was represented by the late Ernest Young, Esq.

About the date above mentioned, the defendant retained the services of plaintiff to represent him in future proceedings in the criminal case. The case was called for trial in September, 1945. At that time Mr. Young was in ill health, and although he remained in the case, and participated to a limited extent in the conduct of the trial, the chief burden of directing the defendant's case apparently fell on the shoulders of plaintiff herein. The case was submitted to the jury on the second day of the trial, and a verdict of guilty was returned, and judgment entered thereon. Thereafter a motion for new trial was interposed, supported by affidavits to the effect that one of the jurors had concealed on voir dire examination his relationship to the complaining witness. The motion was denied. Mr. Young withdrew from the case after the trial.

As to most of what transpired after that time there is a sharp conflict in the evidence. Defendant had a conference with plaintiff in plaintiff's office concerning an appeal to this court from the judgment of conviction in the district court. According to the plaintiff's testimony defendant was accompanied by his brother, Jesse Peterson, but not by his wife at this particular conversation; they, or one of them, suggested that another attorney be associated with plaintiff in perfecting the appeal. The names of several Utah lawyers were suggested as possible associates. According to plaintiff's testimony he indicated doubt as to how successfully he could work with any of those suggested, and expressed a preference to withdraw from the case if any of them were retained. He then suggested the name of Mr. George Halverson, Esq., a member of the Utah Bar who had lived and practiced in Weber and Cache Counties for many years, but who was then living and practicing in Los Angeles, California. Plaintiff offered to write to Mr. Halverson and inquire what he would charge to join in the appeal of the case.

Defendant's version of this conversation was to the effect that he was accompanied by his wife, as well as by his brother, Jesse, that plaintiff said the case was very serious, that he did not want to bear the full burden of the responsibility, and he would like to have another attorney associated with him. Defendant then suggested the names of various Utah attorneys and plaintiff replied that he could not work with them, that their fees were too high, and that if they were engaged he would withdraw from the case. He then said that Mr. Halverson was a very good friend of his, that he owed him a great favor, that he would like to have him in the case, and would write him and see what he would charge to become associated. This testimony was substantially corroborated by defendant's wife.

In any event, it was finally determined that plaintiff should write to Mr. Halverson. Halverson replied, agreeing to assist in preparation of the briefs for a fee of $200.

Plaintiff testified that he spent several days in research in regard to the problems involved, and particularly the question of criminal intent, and that he then drew a draft of the proposed brief, and took the draft and record of the trial proceedings down to Los Angeles. He admitted that he took his family with him on this trip.

Plaintiff testified that he spent four full days (the entire time he was in Los Angeles) and three evenings in conference with Halverson at the latter's office, during which time the whole case was thoroughly reviewed and various changes in the brief were considered.

After plaintiff returned to Salt Lake City he further polished the brief, and then had it printed and filed. The State filed its brief, and to this plaintiff deemed it necessary to file a reply brief. Mr. Halverson did the bulk of the work in preparing the reply brief. At the time the reply brief was printed, plaintiff billed defendant for $150 for costs of printing the brief, although the printer's bill for this service was only $39.78.

Plaintiff apparently felt himself inadequate to argue the case to this court, and urged that Halverson be engaged to make the oral argument. Plaintiff informed defendant that Halverson would make the oral argument for $500, but there is a dispute in the evidence as to whether or not this sum was to include Halverson's costs of coming to Salt Lake City or whether they were to be paid in addition to the fee.

It is undisputed that Halverson came to Salt Lake City and made the oral argument to this court. Thereafter, by judgment of this court rendered November 30, 1946, the judgment of the trial court was reversed and remanded for new trial. *State* v. *Peterson,* 110 Utah 413, 174 P. 2d 843. Soon, thereafter plaintiff and defendant became involved in a dispute over the fee which plaintiff should receive, as a result of which this law suit arose. Plaintiff withdrew from the case, and thereafter the criminal charge was dismissed on motion of the district attorney.

It is undisputed that during the course of time plaintiff served as counsel for defendant, he received from defendant the following sums of money:

| | |
|---|---:|
| August 3, 1945 | $ 25.00 |
| September 29, 1945 | 100.00 |
| October 26, 1945 | 125.00 |
| November 14, 1945 | 500.00 |
| February 28, 1946 | 100.00 |
| May 20, 1946 | 113.00 |
| May 21, 1946 | 362.85 |
| June 3, 1946 | 155.00 |
| December 3, 1946 | 65.30 |
| Total | $1546.15 |

Of this amount, it is undisputed that plaintiff paid to Halverson $700; to Betty Owens, the court reporter, $46; and to the printing company for printing briefs $122.82. Plaintiff testified that his expenses for the trip to Los Angeles were about $100, that Halverson's expenses for his trip to Salt Lake City were $65.30, and that he had incurred long-distance telephone bills in the total sum of $3.95. He did not claim any allowance for costs of his trips to Logan, where the criminal action was tried.

In his complaint, plaintiff alleged that defendant agreed to pay plaintiff "reasonable compensation" for his services, that the services of plaintiff were of the reasonable value of $1500, no part of which had been paid except the sum of $100, and that there remained due and unpaid the sum of $1400. By his second amended answer and counterclaim (erroneously denominated cross-complaint), defendant admitted that plaintiff should have a reasonable sum for his services, and alleged that plaintiff had been paid "no less than $1700, part of which was paid to attorney Halverson," and that such sum was excessive, and was paid under "a false and misrepresentation [sic] of facts as to expense and that said attorney Halverson would be needed on appeal * * *."

Defendant further alleged that the expenses of the appeal were not in excess of $175 and that a reasonable attorney's fee was "not more than $600.00" including the services of Halverson, and prayed judgment in the sum of $1100.

As. heretofore indicated, the cause was tried to a jury which returned a verdict adverse to plaintiff on his cause of action, and in favor of defendant in the sum of $500 on his counterclaim. From that verdict, and the judgment thereon, plaintiff prosecutes this appeal. All of the assignments of error relate to the instructions to the jury, and the court's refusal to give certain instructions requested by plaintiff.

By plaintiff's requested instruction No. 2, the court was asked to charge the jury that in determining what was a reasonable compensation to plaintiff, plaintiff could not be charged with money paid to George Halverson for his services rendered in the case. By plaintiff's requested instruction No. 4, the court was asked to charge the jury that if defendant "met George Halverson in the plaintiff's office and saw and heard him make the argument on appeal of the case in the Supreme Court" then defendant would be deemed to have ratified and approved the employment and compensation paid to Halverson by the plaintiff, and such compensation could not be charged to the plaintiff. The evidence was undisputed that defendant met Halverson in plaintiff's office on the morning that the case was argued to this court, and that defendant was present in court, and heard Halverson make the oral argument of the case to this court. Nor is there any dispute that defendant assented to Halverson's employment in the case. There is, however, a serious question as to whether or not such assent was obtained by threats or by misleading statements on the part of plaintiff. Neither request was given by the court.

The general rule is that an attorney who has been engaged to repesent a client in a particular case has no implied authority to employ an associate or assistant counsel as his client's expense. *Orwig* v. *Chicago, R. I. & P.*

*R. Co.*, (Ia.), 217 Iowa 521, 250 N. W. 148, 90 A. L. 1, 2
R. 258, and cases there cited; *Bentley* v. *Fidelity &*
*Deposit Co. of Maryland*, 75 N. J. L. 828, 69 A. 202, 127
Am. St. Rep. 837, 15 Ann. Cas. 1178; Annotation in 15 Ann.
Cas. 1180 et seq., and cases there cited; annotation in 90
A. L. R. 265, 266, and cases there cited; 5 Am. Jur. 302,
Attorneys at Law, Sec. 73. Of course the client may ex-
pressly authorize the attorney to engage additional counsel
at his expense, and there was evidence that such was done
in this case. And after an attorney has employed another
attorney to assist him, even without authority from his
client to do so, the client may ratify such appointment, and
become liable to pay fees to both attorneys. But in the
absence of express or implied authority to engage additional
counsel at the client's expense, and in the absence of ratifi-
cation of such appointment by the client, the attorney who
engages additional counsel has the duty of paying such
counsel out of his own fee. 5 Am. Jur. 302, Attorneys at
Law, Sec. 73; Annotation in 90 A. L. R. 265, 269 and cases
there cited; Annotation in 15 Ann. Cas. 1180, 1181, and
cases there cited.

In this case, Halverson's services were engaged after
the attorney-client relationship between plaintiff and de-
fendant had been entered into. After the attorney-client
relationship has been entered into, the parties there-
to may change the terms of their agreement or enter
into an entirely new agreement, and if the substituted
agreement was entered into after full and fair disclosure by
the attorney, such an agreement will be upheld. However,
such contracts are looked upon with great suspicion by the
courts, and there is a presumption that such agreements are
invalid, especially where the result thereof is to increase the
compensation to be received by the attorney, or is other-
wise of greater advantage to him. And the burden is upon
the attorney to show by clear and convincing evidence, that
any such agreement was entered into after full and fair dis-
closure, and without any threats, fraud, force, coercion,
duress, misrepresentation, or other improper conduct. 5

Am. Jur. 357, 358 Attorneys at Law, Sections 160, 161; *Moore* v. *Rochester Weaver Min. Co.*, 42 Nev. 164, 174 P. 1017, 19 A. L. R. 830; Annotation in 19 A. L. R. 847, 856, and cases there cited; Annotation in 2 A. L. R. 844 et seq.; *Matter of Howell*, 215 N. Y. 466, 109 N. E. 572, Ann. Cas. 1917A, 527 Annotation in Ann. Cas. 1917A, 531, 533, 536, 537, and cases there cited; and 2 Thornton on Attorneys at Law 747, Sec. 432.

There is evidence in this case from which a jury could reasonably find that plaintiff's purpose in insisting upon the engagement of Halverson as attorney was, not because he believed the best interest of defendant required Halverson's services, but because he desired to repay ▬▬ Halverson a favor. There is also substantial evidence that defendant's assent to the engagement of Halverson's services was obtained by threats of plaintiff to withdraw from the case, and misleading defendant as to the difficulties of his case. Hence, plaintiff was not entitled to an instruction that money paid to Halverson could not be charged against plaintiff as part of his compensation. The court did not err in refusing plaintiff's requests number 2 and 4. It should be noted, however, that the court should have charged the jury in substance that if they found from evidence which was *clear and convincing* that defendant authorized plaintiff to engage the services of Halverson in defendant's behalf, and that such authorization was given freely and voluntarily by defendant, after a full and fair disclosure of all facts and circumstances of the case, and without any threats or other improper conduct on the part of plaintiff, then defendant was obligated to pay the agreed price of Halverson's services, in addition to the reasonable value of services rendered by plaintiff. The jury should have been further instructed that if they believed from the evidence that plaintiff's assent to Halverson's employment was obtained by threats, or by failing to state fully and fairly all of the facts and circumstances of the case, then any monies paid to Halverson should be credited to defend-

ant as compensation paid by defendant to plaintiff for services rendered by plaintiff.

Plaintiff excepted to, and assigned as error, the refusal of the court to give plaintiff's requested instruction No. 3, and to the giving of paragraph 3 of the court's instruction No. 10. The question raised by these assignments of error is whether or not plaintiff was entitled to a peremptory instruction as to defendant's counterclaim.

As heretofore noted the evidence is undisputed that defendant had paid to plaintiff, in various installments, the total sum of $1,546.15. It is likewise undisputed that of this amount $46 was paid by plaintiff for the services of the reporter, and $122.82 was paid for the printing of briefs, for a total of $168.82 of undisputedly necessary costs. This would leave $1,377.33 for attorney's fees and incidental expenses. If the jury found, as well it might, that defendant's assent to plaintiff's proposition that Halverson be engaged, were obtained by improper means, then plaintiff and not defendant was bound to pay for Halverson's fees. There is evidence in the record that the reasonable value of the legal service rendered in behalf of defendant was an amount considerably less than $1,377.33. Therefore, the court did not err in refusing to take from the jury the issue on defendant's counterclaim.

Plaintiff also assigns as error the refusal of the court to give his requested instruction No. 5, which was as follows:

"You are instructed that all money paid by the defendant to the plaintiff and used by the plaintiff to pay costs and expenses incurred by the plaintiff for and on behalf of the defendant, are not chargeable against the plaintiff and cannot be an offset to any amount you may find to be a reasonable sum for services rendered by the said plaintiff."

By instruction No. 6, the court charged the jury that the sum of $122.82 for printing briefs, and the sum of $46 for the reporter's services, were not chargeable against the

plaintiff, and could not be offset against any amounts the jury might find due and owing to plaintiff.

By instruction No. 7 the court instructed the jury that the plaintiff was not

"entitled to compensation for personal, office, and travelling expenses in absence of a special agreement made prior to or at the time of his employment by defendant. * * *"

It is undoubtedly true that an attorney, by virtue of his employment, has implied authority to incur such expenses as may be reasonable, proper, and necessary to the conduct of his client's business; and if the attorney advances money for such costs, he is entitled to be reimbursed therefor, separately and apart from his fee for services. 5 Am. Jur. 317, 386, Attorneys at Law, Sections 95, 206; *Manzo* v. *Dullea,* 2 Cir., 96 F. 2d 135, 116 A. L. R. 1241; 2 Thornton on Attorneys at Law, 864, Section 486.

However, the authority of the attorney to incur expenses on behalf of his client is not unlimited. The expenses must be reasonable, and must be necessary, or incidental to the legitimate services performed by the attorney. As to such expenses as filing fees, costs of printing briefs, costs of preparing transcripts of testimony, witness fees, costs of serving process, and similar expenditures, there can ordinarily be no question. But travelling expenses, long distance telephone calls, and similar matters, are somewhat different. There may be many cases where it is absolutely necessary or highly desirable that an attorney incur travelling expenses, in order to serve properly the interests of his client, and in such cases the client should pay those expenses. On the other hand, an attorney is not authorized to take a trip at the expense of his client, on the pretex of looking after his client's business, when the alleged purpose of the trip could be satisfactorily accomplished by mail or telephone. Nor should the attorney incur costs of long distance telephone calls, when the matter

can be as well accomplished by mail or other means. We do not mean to infer by this, that plaintiff was guilty of such conduct.

Whether or not an expense was reasonable, and whether or not it was necessary or proper, will ordinarily be a question of fact, to be determined by the jury, or by the court sitting as trier of the facts. In this case there was evidence that plaintiff incurred travelling expenses. Whether or not they were reasonable, and whether or not they were proper or necessary, was a question of fact which should have been submitted to the jury.

Plaintiff's requested instruction No. 5 was couched in broad and general terms, and a fair construction of its meaning would be that all costs and expenses, whether reasonable or unreasonable, and whether necessary and proper, or wholly unnecessary and superfluous, incurred by plaintiff on behalf of the defendant, were not chargeable against the plaintiff. The requested instruction does not in any way limit the charges or expenses which plaintiff might have incurred against the defendant. For this reason it was not error for the court to refuse to give the instruction.

But on the other hand, the court's instruction No. 7 was manifestly erroneous. Although whenever possible the attorney should obtain express authorization from his client, before undertaking a trip at his client's expense, such may not be possible, in all cases, due to illness or absence of the client, or for some other equally good reason. And in no event can it be said that such express authorization must be made prior to, or at the time of, the attorney's employment by his client. In many cases the need or desirability of the attorney's travelling in his client's behalf may not be apparent at the time the services of the attorney are retained. The same may be said for other expenses such as telephone bills.

Plaintiff also assigns as error the court's refusal to give his requested instruction No. 1 to the effect that plaintiff was entitled to recover reasonable attorney's fees as a matter of law. The court's instruction No. 5 contained substantially the same language, and it was put to the jury in even stronger terms in the third paragraph of instruction No. 11. There was no error in that regard.

We note also plaintiff's assignment of error that the court refused his requested instruction No. 6 to the effect that if the jury found from the evidence that plaintiff and defendant agreed upon the amount of the fee for services rendered by plaintiff, then such agreement was binding upon the parties and the verdict should be in favor of the plaintiff for the amount agreed upon.

The request is open to several objections, but in disposing of it, it is sufficient to say that plaintiff did not declare upon an express agreement to pay a specific sum, but upon an agreement to pay the reasonable value of his services. Hence, the requested instruction clearly went beyond the issues made by the pleadings.

For the error in giving instruction No. 7 the case is reversed and remanded for new trial. Costs to appellant.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

LATIMER, J., concurs in the result.